***********
Upon review of the competent evidence of record with reference to the errors assigned and finding good grounds to reconsider the evidence, the Full Commission reverses the Opinion and Award of the Deputy Commissioner as follows:
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the deputy commissioner and in the Pre-Trial Agreement as:
 STIPULATIONS
1. The parties are bound by and subject to the North Carolina Workers' Compensation Act.
2. Key Risk Management Services is the carrier on risk.
3. Plaintiff's medical records were stipulated into evidence as Stipulated Exhibit 1. These records consist of documentation from Duplin County EMS, Duplin General Hospital, Satvir Singh, M.D., Duplin General Hospital Physical Therapy Department, and Barry L. Katz, M.D.
4. Wage Information was stipulated into evidence as Stipulated Exhibit 2.
5. Industrial Commission forms and filings relating to this case were stipulated into evidence as Stipulated Exhibit 3.
4. Defendants' answers to plaintiff's second set of interrogatories and defendants' answers to plaintiff's Motion to Request Medical and Surveillance records were stipulated into evidence as Stipulated Exhibit 4.
5. Plaintiff's responses to defendant's first set of interrogatories were stipulated into evidence as Stipulated Exhibit 5.
6. The issues before the Full Commission are: (i) whether an employment relationship existed between the plaintiff and defendant-employer; (ii) whether plaintiff sustained an injury by accident arising out of and in the course of his employment; and (iii) if so, what compensation, if any, is due plaintiff?
 *********** EVIDENTIARY RULINGS
The objections raised in the depositions of Barry I. Katz, M.D., and Satvir Singh, M.D., are OVERRULED.
 ***********
Based upon all the competent, credible evidence of record, the Full Commission finds as follows:
 FINDINGS OF FACT
1. At the time of hearing before the deputy commissioner, plaintiff was 26 years old and had completed his GED. Plaintiff filed a claim on November 8, 2000 alleging that he sustained an injury to his back while working for defendant-employer on October 8, 2000.
2. Davey George is a supervisor at defendant-employer's House of Raeford/Nash Johnson Sons and is in charge of the chicken catchers for the poultry processing unit. Mr. George supervises two (2) shifts of chicken catchers consisting of approximately forty-five (45) employees, divided into three (3) crews.
3. Mr. George was short of chicken catchers for October 8, 2000 and needed assistance. Darryl Johnson, plaintiff's brother, who worked for defendant-employer, had previously indicated to Mr. George that plaintiff wanted to work. Mr. George contacted plaintiff on October 7, 2000 about working and plaintiff agreed to work on the evening shift. Mr. George had the authority to hire workers for defendant-employer and he hired plaintiff to work as a chicken catcher.
4. Chicken catchers are required to bend over and pick up chickens and place them in cages that the loader brings into the chicken house. As a chicken catcher, plaintiff was required to pick up eleven chickens, four or five in one hand and six or seven in the other hand before loading them into the cages.
5. Mr. George picked up plaintiff and transported him to a farm on the night of October 8, 2000 to work as a chicken catcher. After dropping plaintiff off to work at a farm, Mr. George returned to the plant which was about 25-30 miles away. At some time soon after arriving, Mr. George received a call to come back and pick plaintiff up. When Mr. George returned, plaintiff was wearing gloves and a hair net and was "leaning over in the corner, and he was blowing". The gloves and hair net were required wear for chicken catchers. Mr. George believed plaintiff was unable to perform the work. Catching chickens is hard work, consequently, new hires are not offered full time employment until they demonstrate they can do the work, which usually takes one or two weeks.
6. On October 8, 2000, plaintiff was an employee of defendant-employer, he was hired to work as a chicken catcher; he was transported to work by defendant-employer and defendant-employer knew they were obligated to pay plaintiff to work. Mr. George testified that plaintiff was considered an employee when he reported for work on October 8, 2000; however, he was not considered a full-time, regular employee. Chicken catchers are paid based on the number of chickens caught by the crew.
7. On October 8, 2000, plaintiff began work picking up chickens. At some point in time not long after he began working, plaintiff bent down, picked up some chickens and as he came up, he felt a sharp pain in his back. He put the chickens in the cage and told Mr. Kenneth Southerland, his supervisor, he needed a five (5) minute break because he had hurt his back. Plaintiff believes he worked about 1 hour and 45 minutes before hurting his back, but that time is disputed. Defendants contend he had only worked about 20 minutes.
8. Plaintiff told Mr. George he had hurt his back on the ride home. After returning home, plaintiff's pain worsened and he called a rescue squad ambulance to transport him to the Emergency Room at Duplin General Hospital. Plaintiff called the ambulance because he had no transportation and he needed medical treatment for his low back pain.
9. Plaintiff was treated at the Emergency Room on October 9, 2000. He complained of low back pain on the left side and left side leg numbness. The doctor diagnosed sciatica, prescribed medication (Flexeril and Tylenol) and referred plaintiff to Duplin Medical for follow-up treatment.
10. Plaintiff sought treatment with Dr. Satvir Singh at Duplin Medical on October 11, 2000. He complained of severe low back pain, especially on the left side with tingling and numbness radiating down his left leg into his toes. Plaintiff stated that he needed crutches to ambulate. He also stated that he could not afford to get his prescription from Dr. Miller at the Emergency Room filled.
11. Dr. Singh diagnosed sciatica and lumbar spasms, prescribed medication, took plaintiff out of work for one week, restricted him to light duty for three weeks and also recommended physical therapy. On November 14, 2000 Dr. Singh referred plaintiff to a neurosurgery or orthopedic specialist when his symptoms persisted. He also ordered a lumbar spine MRI which was done on November 20, 2000.
12. Plaintiff's MRI showed mild degenerative facet changes but no evidence of focal disc herniation or nerve root compression.
13. At plaintiff's December 1, 2000 visit to Dr. Singh for a cold, plaintiff did not complain of back pain. Plaintiff did complain of back pain at his February 1, 2001 doctor's visit, but the pain was not radiating to his legs. Plaintiff continued to complain of low back pain during subsequent visits to Dr. Singh's office.
14. Plaintiff did not keep his initial appointment with Dr. Barry Katz, a neurosurgeon, but he did see Dr. Katz on February 15, 2001. Dr. Katz examined plaintiff on February 15th and found that he had no significant pain noted during palpation of the back. Plaintiff's strength was difficult to test because plaintiff did not appear to be giving maximal effort; he had no focal sensory deficits and plaintiff appeared to be walking normally. Dr. Katz changed plaintiff's medication and requested that plaintiff bring his MRI films at the next visit.
16. Plaintiff missed his next scheduled appointment, but returned to Dr. Katz on August 2, 2001, approximately 6 months later. Plaintiff did not bring his MRI results. Dr. Katz ordered x-rays which apparently were not done and again requested that plaintiff bring his MRI at the next scheduled appointment. Plaintiff did not return to Dr. Katz. Based upon his two physical examinations, Dr. Katz found no objective evidence that plaintiff was still suffering from a back injury.
17. Based on the greater weight of the evidence, plaintiff sustained a low back injury on October 8, 2000, arising out of and in the course of his employment with defendant-employer as a direct result of a specific traumatic incident of the work assigned when he bent over to pick up chickens and immediately experienced a sharp pain in his back.
18. As a result of his back injury, plaintiff was not physically able to work for one week and was restricted to light duty for three more weeks. Plaintiff did not attempt to return to work for defendant-employer or any other employer during the period he was restricted to light duty. Since plaintiff's work status with defendant-employer was part-time, temporary, it is unlikely defendant-employer would have offered him light duty work. Due to his pre-existing mental condition, his limited work history and his physical restrictions resulting from the injury, it is very unlikely that plaintiff could have found light duty work during the three week period Dr. Singh restricted him to light duty. Also, plaintiff was participating in physical therapy during this period which would have further restricted his ability to look for work; therefore, seeking light duty work would have been futile.
19. Based on the greater weight of the evidence, plaintiff was disabled from work as a result of his back injury for four weeks. Thereafter, plaintiff did not make reasonable efforts to find suitable employment.
20. Based on the greater weight of the evidence, plaintiff's employment status was comparable to that of a part-time, temporary chicken catcher. Based upon the wages of four part-time chicken catchers as reflected in Stipulated Exhibit 2, plaintiff's average weekly wage was $218.55 which yields a compensation rate of $145.68.
 ***********
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff was an employee of defendant-employer. N.C. Gen. Stat. § 97-2(2).
2. On October 8, 2000, plaintiff sustained a compensable back injury arising out of and in the course of his employment with defendant-employer as a direct result of a specific traumatic incident of the work assigned. N.C. Gen. Stat. § 97-2(6).
3. As a result of his compensable injury, plaintiff was temporarily totally disabled from October 9 through November 8, 2000, a period of four weeks from Dr. Singh's restrictions on October 11, 2000. Plaintiff is entitled to temporary total disability at the rate of $145.68 per week during his period of disability. N.C. Gen. Stat. § 97-29.
4. Using the wages of comparable employees is the most practical and fair way to compute plaintiff's average weekly wage. Based on the wages of comparable employees, plaintiff's average weekly wage is $218.55, yielding a compensation rate of $145.68.
5. Plaintiff is entitled to payment by defendant of all medical treatment arising from his injury, which would include trips to the Emergency Room, treatment by Dr. Katz and Dr. Singh and all treatment provided by Dr. Singh's office as well as referrals from Dr. Singh, diagnostic tests ordered by Dr. Singh and prescribed medication. N.C. Gen. Stat. § 97-25.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following
 AWARD
1. Defendants shall pay to plaintiff temporary total disability benefits from October 9, 2000 to November 8, 2000 at the rate of $145.68 per week.
2. Defendants shall pay all medical treatment reasonably related to plaintiff's compensable injury when bills are submitted according to procedures established by the Commission.
3. Defendants shall pay directly to plaintiff's attorney one-third of the compensation awarded to plaintiff in paragraph 1 above.
4. Defendants shall pay the costs due this Commission.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/____________ BUCK LATTIMORE CHAIRMAN
 S/_______________ RENEE C. RIGGSBEE COMMISSIONER
BSB:md